UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYAN SALATINO, and JERREL PARKER, an individual, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 23-CV-1779 JLS (BLM)<br><br>**ORDER DENYING PLAINTIFF DYAN SALATINO'S MOTION TO REMAND TO STATE COURT**<br><br>(ECF No. 12) |

    Presently before the Court are Plaintiff Dyan Salatino's Motion to Remand Case to State Court ("Mot.," ECF No. 12) and Memorandum of Points and Authorities ("Mem.," ECF No. 12-1) in support thereof. Defendant American Airlines, Inc., filed an Opposition to the Motion ("Opp'n," ECF No. 16) and two supporting declarations: the Supplemental Declaration of Deann Collins ("Collins Decl.," ECF No. 16-1) and the Supplemental Declaration of Alexandra Vivoli ("Vivoli Decl.," ECF No. 16-2). Plaintiff then submitted a Reply ("Reply," ECF No. 18). The Court took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 17. Having carefully considered the Parties arguments and the law, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

Plaintiff initiated this putative class action by filing her Complaint ("Compl.," ECF No. 1-2) on June 20, 2023, in the Superior Court of California, County of San Diego. The Complaint contains nine causes of action, including alleged violations of (1) California Business and Professional Code §§ 17200, *et seq.* (Unlawful Business Practices); (2) California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (3) California Labor Code § 510 (Unpaid Overtime Wages); (4) California Labor Code §§ 226.7 and 512 (Failure to Provide Meal Breaks); (5) California Labor Code §§ 226.7 and 512 (Failure to Provide Rest Periods); (6) California Labor Code § 226 (Failure to Provide Accurate Wage Statements); (7) California Labor Code § 2802 (Failure to Indemnify Employees for Expenditures); (8) California Labor Code §§ 201, 202, and 203 (Failure to Timely Pay Final Wages); and (9) California Labor Code §§ 201 through 204, 210, 233, and 246 (Failure to Pay Sick Pay Wages). *See generally* Compl.

On September 27, 2023, Defendant removed this action to this Court pursuant to 28 U.S.C. §§ 1132, 1441, 1446, and 1453. *See* Notice of Removal ("NOR") at 1, ECF No. 1. Defendant claimed this Court had diversity jurisdiction under the Class Action Fairness Act ("CAFA") pursuant to 28 U.S.C. §§ 1132(d) and 1441. *Id.* Plaintiff's Motion followed.

## LEGAL STANDARD

Generally, defendants may remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). "The party seeking the federal forum bears the burden of establishing that the statutory requirements of federal jurisdiction have been met." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).

CAFA gives federal courts jurisdiction over certain class actions if (1) the class has more than 100 members, (2) the parties are minimally diverse, and (3) the amount in

controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). While courts typically "strictly construe the removal statute against removal jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

To satisfy CAFA's amount-in-controversy requirement, "a removing party must initially file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 89). At that point, the "notice of removal 'need not contain evidentiary submissions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

However, when a plaintiff contests the defendant's calculations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. "The preponderance of the evidence standard, in practical terms, requires the defendant to provide persuasive evidence that 'the potential damages *could* exceed the jurisdictional amount,' as opposed to requiring 'a prospective assessment of defendant's liability' to any degree of certainty." *Richards v. Now, LLC*, No. 218CV10152SVWMRW, 2019 WL 2026895, at *5 (C.D. Cal. May 8, 2019) (internal citations omitted) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397, 400 (9th Cir. 2010)).

The amount-in-controversy inquiry begins with the plaintiff's complaint. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771 (9th Cir. 2020). Beyond the complaint, parties may provide "affidavits or declarations, or other 'summary-judgment-type evidence.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Further, a defendant's "damages assessment" may rely on "a chain of reasoning that includes assumptions," if such assumptions have "some reasonable ground underlying them." *Id.* at 1199. Once plaintiff has challenged removal, though,

defendants must establish that their assumptions are *reasonable*, not merely plausible. *See Arias*, 936 F.3d at 927.

In short, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Courts "weigh the reasonableness of the removing party's assumptions" and should "not supply further assumptions of [their] own." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). And while both parties may offer evidence, the burden of proof ultimately rests on the removing defendant. "[I]f the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

## ANALYSIS

The sole question before the Court is whether CAFA's amount-in-controversy requirement is met, as neither side disputes that the proposed class consists of more than 100 individuals or that the Parties are minimally diverse. As analysis of the unpaid meal break and rest period allegations raised in the Complaint's first cause of action suffice to answer that question, the Court will not consider Plaintiff's remaining claims. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 995 n.8 (9th Cir. 2022). Before turning to that analysis, however, the Court finds it useful to address some of the basics of CAFA that litigants—including the Parties in this action—often get wrong: (1) the relative burdens borne by plaintiffs and defendants, and (2) the meaning and manner of establishing assumed violation rates.

### I. CAFA's Framework

In this case, the Parties argue primarily about two issues. First, they dispute the applicable burdens of proof. Second, they disagree on the definition of violation rates and how assumptions about such rates must be supported. In making both arguments, the Parties misapply CAFA caselaw to varying degrees.

///

///

### A. The Parties' Burdens

As an initial matter, and as Plaintiff recognizes, *see* Reply at 9, Defendant's Notice of Removal and Opposition need not be held to the same standard. Plaintiff's Motion faulted Defendant for failing to include in the Notice of Removal any evidence regarding how many meal-break- or rest-period-eligible shifts were worked by the putative class. *See* Mem. at 16. But notices of removal "need not contain evidentiary submissions." *Ibarra*, 775 F.3d at 1197. Defendants are given the opportunity to submit evidence, and alter their initial calculations, when opposing a plaintiff's motion to remand. *See Biag v. King George - J&J Worldwide Servs. LLC*, No. 20-CV-307-BAS-DEB, 2020 WL 4201192, at *4 (S.D. Cal. July 22, 2020). Defendant made use of that opportunity here, so only arguments addressing the Opposition's renewed estimates are relevant.

Plaintiff otherwise misunderstands Defendant's burden. Namely, Plaintiff claims Defendant "has not overcome the 'strong presumption' that the amount in controversy is insufficient to confer federal jurisdiction." Reply at 9 (quoting *Henson v. Billing Concepts*, Inc., No. CV 09-218 PA (EX), 2009 WL 10453160, at *2 (C.D. Cal. Mar. 23, 2009)). As the Supreme Court has made exceedingly clear, however, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 82. Plaintiff might have realized her mistake had she not inaccurately listed *Henson*—the case upon which she relies—as a 2019 decision in her Reply, rather than the correct year of 2009.

Defendant, in turn, misunderstands the task before Plaintiff. Defendant claims Plaintiff must present evidence to rebut Defendant's math. *See* Opp'n at 22. But while plaintiffs *may* submit evidence, they "*need* only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris*, 980 F.3d at 700 (emphasis added) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). In other words, Plaintiff was not required to provide summary-judgment-type evidence of her own.

/ / /

/ / /

**B.     Violation Rates**

Plaintiff primarily argues Defendant has not adequately supported one element of its calculation: the rate at which Defendant may have hypothetically violated labor law. *See generally* Reply. This argument is built on a flawed foundation, however, as Plaintiff appears to misunderstand what such violation rates represent and the manner in which violation rate assumptions must be supported. Plaintiff's argument thus crumbles upon inspection. To demonstrate the flaws in Plaintiff's logic, the Court provides an overview of the elements of a typical CAFA equation and how violation rates fit therein.

### 1.     Elements of CAFA Calculations

At least in most wage and hour class actions, CAFA amount-in-controversy estimates are premised on three variables: (1) the total number of possible violations; (2) the frequency at which violations might have occurred; and (3) the potential cost associated with each hypothetical violation.

The first variable speaks to the *maximum* number of instances in which a specific kind of violation could have occurred. That figure is generally approximated by tying real numbers to the readily quantifiable dimensions of a complaint's allegations. For example, to hypothesize how often an employer might have failed to compensate workers for their missed meal breaks over a given period, one probably needs to know how many workers the employer had (*i.e.*, the class size), and how many meal-break-eligible shifts they worked. The parameters for making such an estimate are easily pulled from the complaint's definition of the putative class.

The second variable is often called the violation rate, which is the frequency at which violations might reasonably have occurred. In wage and hour suits, a violation rate generally represents the percentage of shifts in which putative class members hypothetically experienced a violation. *See Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 845 n.2 (C.D. Cal. 2019) ("A 100% violation rate calculation assumes violations occurring in every identified shift for each class member."). So, if a defendant assumed one violation occurred every four violation-eligible shifts, the

defendant would be using a violation rate of 1/4, or 25%.

The final variable represents the cost of each potential violation. The proper method for estimating this figure, and the information required to do so, will depend on how a given statute or regulation calculates a penalty. If, say, a penalty is defined as one hour of pay at the state's minimum wage, one must generally know what that statutory minimum wage was during the class period.

Once each of these variables is assigned a value, the interplay between them is relatively simple in most cases; the numbers need only be multiplied together. By way of example, assume (1) a defendant's employees worked 100 violation-eligible shifts, (2) there is reason to think one violation may have occurred every two shifts; and (3) each violation comes with a $10 penalty. The possible amount-in-controversy would be calculated as (100 shifts) x (1 violation / 2 shifts; or 50%) x ($10 per penalty), resulting in a total of $500.

### 2. *Reasonable Grounds for Assumed Violation Rates*

Plaintiff contends Defendant cannot reasonably assume any violation rate without offering "real" evidence "regarding the frequency or nature of the alleged violations." Reply at 5. Plaintiff's argument fails to appreciate the difference between the CAFA variables discussed above. To the extent Plaintiff claims a violation rate assumption must itself be supported by summary-judgment-type evidence from outside of the Complaint, she is mistaken.

When estimating the first and third variables, a defendant must generally provide evidentiary support. This is not surprising for several reasons. For one thing, evidence regarding the total number of violation-eligible shifts, or the average cost of a violation, is often readily available. An employer may be able to turn to its payroll system and quickly pull a list of all employees who worked during a given period. Relatedly, plaintiffs' complaints are often vague on these points, so defendants have few places to look for supporting information outside of their own records. Most important, though, is the principle that CAFA does not require defendants to *prove* their actual liability. *See Lewis*,

627 F.3d at 400.  Rather, defendants need only establish their "possible liability."  *Greene*, 965 F.3d at 772.  And estimates of the number of workers, the length of their shifts, or their average pay are not inherently incriminating; such evidence sheds no light on how often a defendant *actually* violated the law, but instead points only to how often a defendant *could* have done so.

Violation rates are different.  Mandating evidentiary support for a violation rate assumption is akin to "requir[ing] that [a defendant] prove it actually violated the law at the assumed rate."  *Arias*, 936 F.3d at 927.  "[A] removing defendant is not required to go so far . . . . "  *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (quoting *Feao v. UFP Riverside, LLC*, No. CV173080PSGJPRX, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017)); *see also Serrieh v. Jill Acquisition LLC*, No. 2:23-CV-00292-DAD-AC, 2023 WL 8796717, at *4 (E.D. Cal. Dec. 20, 2023) ("[A] defendant is not required to identify an exact frequency of violations for the purposes of calculating the amount in controversy.").  For that reason, defendants may ground violation rate assumptions in the language of a plaintiff's complaint.  *See Arias*, 936 F.3d at 927 (finding defendant's violation rate assumptions "plausible" and noting they "may prove reasonable *in light of the allegations in the complaint*" (emphasis added)).

A defendant's CAFA calculations might fall short due to insufficient evidence regarding the first or third variables, or because the complaint's allegations and the defendant's assumed violation rate are incongruous.  Indeed, a defendant's estimates may fail on all three counts.  But the arguments that apply to one variable do not necessarily, or even usually, apply to the others.  Plaintiff's failure to understand that ultimately dooms her bid for remand.

/ / /
/ / /
/ / /
/ / /
/ / /

## II. Application

With the three-variable framework outlined above, the Court turns to the Complaint's[1] meal break and rest period allegations and Defendant's estimates.

### A.   *Total Number of Possible Violations*

Plaintiff alleges Defendant failed to provide California Class members with legally required meal breaks and rest periods during the class period.[2] Compl. ¶ 11–12. Estimating the maximum number of possible violations thus requires determining the size of the potential class and the number of violations they might have experienced.

The first consideration is the size of the California Class, which the Complaint defines as "all individuals who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of [the] Complaint." Compl. ¶ 4. Defendant produced evidence identifying 9,514 such individuals. Vivoli Decl. ¶ 10. Defendant also established that of those employees, 3,970 were or are flight attendants. *Id.* ¶ 11. As it happens, payroll data for flight attendants is maintained separately from the records of other employees. *See* Collins Decl. ¶ 5. So, while flight attendants fall within Plaintiff's class definition, Defendant made its meal break and rest period calculations using a putative class of 5,544—the number of non-flight-attendant workers. *See* Opp'n at 12 & n.1; Vivoli Decl. ¶¶ 12–13.

Next comes the number of violation-eligible shifts. In California, an employee who works more than five hours per day is entitled to a meal break of at least thirty minutes. Cal. Lab. Code § 512. Meanwhile, employers must provide a ten-minute rest period for

---

[1] Plaintiff filed an Amended Complaint ("Am. Compl.," ECF No. 22) on December 22, 2023. Still, the Court looks only to the original Complaint because, subject to limited exceptions not applicable here, "whether remand is proper must be ascertained on the basis of the pleadings at the time of removal." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). And in any event, a review of the Amended Complaint yields no changes that might otherwise have impacted the Court's analysis.

[2] Defendant presumes, and Plaintiff does not dispute, that the class period runs from June 20, 2019, to September 12, 2023, for the purposes of Plaintiff's Motion.

every four hours worked. Cal. Code Regs. tit. 8, § 11090(12)(A). Because California law mandates breaks only when employees work shifts of a certain length, courts generally require defendants to provide evidence showing the number of shifts worked by the putative class that were long enough to "permit[] meal and rest breaks." *Alvarez v. Off. Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *4 (C.D. Cal. Nov. 30, 2017). Here, Defendant provided such evidence by showing that putative class members worked 2,754,541 shifts of eight hours or more during the relevant period. Vivoli Decl. ¶ 13.

Based on the foregoing evidence, Defendant has adequately established that meal break and rest period violations could have occurred in a maximum of 2,754,541 shifts. There is one more issue to address, though. Defendant posits that 5,509,082 rest period violations could have occurred in the identified shifts. Defendant is technically right; during an eight-hour shift, an employee is due two ten-minute rest periods. *See* Cal. Code Regs. tit. 8, § 11090(12)(A). But under California Labor Code § 226.7, an employee is limited to recovering "up to two" penalties per workday, "one for failure to provide one or more meal periods, and another for failure to provide *one or more rest periods*." *United Parcel Serv. Wage & Hour Cases*, 125 Cal. Rptr. 3d 384, 393 (Ct. App. 2011) (emphasis added). For purposes of this analysis, then, the California Class could seek compensation for at most 2,754,541 meal break violations and 2,754,541 rest period violations.

### B.     *Defendant's Assumed Violation Rate*

The Complaint alleges "Plaintiff and other California Class Members were from time to time unable to take thirty (30) minute off duty meal breaks" during shifts of at least five hours in length. Compl. ¶ 11. The Complaint similarly alleges "Plaintiff and other California Class Members were required from time to time to work in excess of four (4) hours without being provided ten (10) minute rest periods." *Id.* ¶ 12. Per the Complaint, these labor code violations resulted from Defendant's "policy and practice." *Id.* ¶ 54.

Given the Complaint's "time to time" and "policy and practice" language, Defendant assumes one meal break and one rest period were missed every ten eight-hour shifts

worked. *See* Opp'n at 12. Plaintiff seems to suggest that because Defendant assumed "every single . . . class member[] suffered . . . one meal period violation ever [sic] other workweek," Defendant's estimates are based on a 100% violation rate. Reply at 2–3. But as discussed above, a violation rate represents the percentage of *shifts* in which a violation occurs, not the percentage of class members experiencing a violation. *See Holcomb*, 424 F. Supp. 3d at 845 n.2. Defendant assumes putative class members experienced a violation every ten shifts (a 10% violation rate), *not* every shift. As Defendant does not assume it "always engaged in labor violations," Reply at 3, the cases Plaintiff cites regarding the unreasonableness of assuming violation rates of 100% are inapposite.

Further, Defendant's 10% violation rate assumption is reasonable in light of the Complaint's "from time to time" and "policy and practice" allegations. Indeed, courts routinely find similar language to provide a reasonable basis for assuming even higher violation rates. *See, e.g.*, *Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal. July 27, 2022) ("District courts in this circuit have found violation rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation[s]."); *Cavada v. Inter-Continental Hotels Grp., Inc.*, 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (finding 10% rest period and 20% meal break violation rates reasonable considering "time to time" and "policy and practice" allegations); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (deeming 20% rate reasonable where complaint alleged "pattern or practice" of violations).

Plaintiff's remaining counterarguments are unavailing. Plaintiff correctly notes that a violation rate assumption is not credible just because it is conservative. *See Peters v. TA Operating LLC*, No. EDCV221831JGBSHKX, 2023 WL 1070350, at *9 (C.D. Cal. Jan. 26, 2023) ("[T]he problem is not necessarily that Defendants picked a violation rate that is too high. The problem is that the Court cannot discern why it picked that number at all . . . ."). However, Defendant is not precluded from using a conservative violation rate if it is supported by Plaintiff's own allegations. Additionally, the Court acknowledges that

perhaps evidentiary support *could* sometimes help establish a violation rate. That said, the Court cannot fathom what additional evidence Defendant could raise here to support its violation rate assumptions without proving how many violations actually occurred. *See Chavez*, 2019 WL 1501576, at *3 ("[Defendant] is 'not obligated to research, state, and prove' [Plaintiff's] claims." (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008))).

### C. Cost of Each Violation

Failing to comply with California's meal break and rest period requirements can quickly become costly. An employer must pay an employee a premium of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest . . . period is not provided." Cal. Lab. Code § 226.7. Defendant's evidence shows that, during the relevant period, the 5,544 putative class members were paid $29.84 per hour on average. Collins Decl. ¶ 4. Courts routinely accept a class's average hourly rate as a stand-in for calculating missed-break premiums. *See, e.g.*, *McCollum v. TGI Friday's, Inc.*, No. SACV2200392FWSJDE, 2022 WL 2663870, at *5–*6 (C.D. Cal. July 11, 2022); *Sanchez v. Abbott Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (holding evidence showing "averages of the putative class" can suffice for CAFA purposes).

### D. Final Calculations

With values assigned to the pertinent variables, only straightforward arithmetic remains. The total universe of potential violations includes 2,754,541 missed meal breaks and 2,754,541 withheld rest periods. Using Defendant's reasonable 10% violation rate yields approximately 275,454 violations of each type. If every violation results in a penalty equal to one hour of a putative class member's regular rate of pay, or an average of $29.84 in this case, the amounts in controversy for these claims come to roughly $8,219,550 for meal breaks and $8,219,550 for rest periods.[3] These figures, either of which individually

---

[3] $8,219,550.34 = 2,754,541 shifts x 10% violation rate x $29.84 per hour

clears CAFA's $5,000,000 hurdle, combine to a total of approximately $16,439,100.

## CONCLUSION

Using real evidence and reasonable assumptions, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Plaintiff's Motion to Remand (ECF No. 12) is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: March 7, 2024

Hon. Janis L. Sammartino
United States District Judge